FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY J., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:17-CV-03125-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15, 19. Attorney D. James Tree represents Timothy J. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on May 1, 2013, Tr. 49-50, 671-91, alleging

disability since June 9, 2012, Tr. 288, 672, due to deep vein thrombosis in both legs, bilateral carpal tunnel syndrome, cellulitis, a right leg and ankle injury, learning disability, color blindness, and right shoulder separation from socket, Tr. 287, 672. The applications were denied initially and upon reconsideration. Tr. 70-72.[1] Administrative Law Judge (ALJ) Tom L. Morris held hearings on January 16, 2015 and August 13, 2015 and heard testimony from Plaintiff and vocational experts, Leta Berkshire and Kimberly Mullinax. Tr. 702-75. The ALJ issued an unfavorable decision on March 16, 2016. Tr. 16-29. The Appeals Council denied review on May 23, 2017. Tr. 7-9. The ALJ's March 16, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on July 26, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the alleged date of onset. Tr. 671. He completed the twelfth grade in 1981. Tr. 288. His reported work history includes the jobs of dishwasher, maintenance, retail associate, general laborer, janitor, and line worker. Tr. 275, 289, 300. Plaintiff reported that he stopped working on June 9, 2012 due to his conditions. Tr. 288.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

---

[1]The record only contains the reconsideration determination dated September 25, 2013. Tr. 70-72. The ALJ's decision contains a reference to an August 21, 2013 initial denial. Tr. 16.

1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs

which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 16, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 9, 2012, the alleged date of onset. Tr. 19.

At step two, the ALJ determined Plaintiff had the following severe impairments: deep vein thrombosis (DVT) and cellulitis of the lower extremities; degenerative changes of the right shoulder; and a history of a remote right ankle fracture. Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a full range of light work with the following limitations:

> The claimant should be allowed to periodically alternate standing with sitting, provided that work tasks can still be accomplished during such shifts and that the tasks can be done in either the sitting or standing position for temporary or longer periods.
>
> The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with the right upper extremity. The claimant should avoid concentrated exposure to hazards (i.e., dangerous machinery, unprotected heights, etc.). The claimant should avoid concentrated exposure to extreme cold.

Tr. 22. The ALJ identified Plaintiff's past relevant work as janitor, doorkeeper, kitchen helper, assembler, commercial cleaner, and agricultural fruit sorter and concluded that Plaintiff was not able to perform this past relevant work. Tr. 27.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cashier II, storage facility rental clerk, and furniture rental consultant. Tr. 28. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 9, 2012, through the date of the ALJ's decision. Tr. 29.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the opinion of Qilin Lu, M.D., (2) failing to consider Plaintiff's obesity, (3) improperly assessing the residual functional capacity as light and applying the incorrect grid rules, and (4) failing to properly address Plaintiff's symptom statements.

## DISCUSSION

**1.    Qilin Lu, M.D.**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by treating physician Dr. Lu. ECF No. 15 at 6-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ

should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Dr. Lu started treating Plaintiff on May 1, 2014. Tr. 473-76. Dr. Lu completed a form for Plaintiff's attorney on August 1, 2014. Tr. 494-96. When asked to list Plaintiff's diagnoses, he included diabetes as stable, recurrent DVT on Coumadin and stable, high cholesterol as stable, and right leg old fracture with ongoing pain. Tr. 494. He stated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate due to worsening pain with prolonged standing. Tr. 495. He limited Plaintiff to sedentary work defined on the form as "[c]an lift 10 pounds maximum and frequently lift and/or carry articles such as dockets, ledgers, and small tools. Although a sedentary job involves sitting, a certain amount of walking and standing may be necessary." *Id.* He stated that Plaintiff had no manipulative limitation in his upper extremities. *Id.* He opined that Plaintiff's limitations had existed since before 2014. Tr. 496.

The ALJ gave Dr. Lu's opinion little weight for five reasons: (1) it was based on Plaintiff's diabetes and high cholesterol, (2) it was based on Plaintiff's

DVT, (3) it was based on Plaintiff's former right ankle injury, (4) it was inconsistent with his treatment notes, and (5) it was inconsistent with Plaintiff's own reports. Both parties agree that the specific and legitimate standard applies in determining whether the ALJ provided legally sufficient reasons for rejecting the opinion. ECF Nos. 19 at 3, 20 at 2.

The ALJ's first reason for rejecting the opinion, that it was based on Plaintiff's diagnoses of diabetes and high cholesterol, is not supported by substantial evidence. The ALJ stated that Dr. Lu "based [his] opinion on the claimant's diabetes and high cholesterol. Medical records since 2010, however, reveal no complaints, complications, or physical restrictions relating to either condition." Tr. 26. Here, the ALJ is premising the rejection on the assumption that Dr. Lu found the impairments of diabetes and high cholesterol to be the cause of Plaintiff's functional limitations. Tr. 26. This is not supported by substantial evidence. In his opinion, Dr. Lu never indicated that Plaintiff's diabetes or high cholesterol were associated with any impairments. Tr. 494-96. Dr. Lu only provided these conditions under the second prompt title "Diagnoses." Tr. 494. Throughout the opinion, he was asked to describe Plaintiff's symptoms, signs, treatment, and side effects of medications. *Id.* Dr. Lu never indicated that any symptom or medication side effect resulting from Plaintiff's diabetes or high cholesterol. *Id*. As such, the ALJ's rationale is not supported by substantial evidence.

The ALJ's second reason for rejecting the opinion, that it was based on Plaintiff's DVT, is specific and legitimate. The ALJ stated the following:

> Dr. Lu based [his] opinion on the claimant's deep vein thrombosis. However, as noted even by Dr. Lu, this condition has been stable on Coumadin. Indeed, a review of Dr. Lu's medical records since the claimant began Coumadin shows consistently normal inspections of the lower extremities, with no signs of edema, cyanosis, or varicosities.

Tr. 26. The ALJ is accurate that while Dr. Lu closely monitored Plaintiff's blood work, the physical exams showed normal examinations of the lower extremities. Tr. 475, 479, 502, 511, 531, 611, 621, 639. There is evidence that Dr. Lu based his limitations on the diagnosis of DVT, stating that signs of Plaintiff's impairments included an "old ankle fracture with recurrent DVT." Tr. 494. Additionally, Dr. Lu found that Plaintiff's pain increased with prolonged standing. *Id*. Therefore, the ALJ's interpretation of the opinion, that the limitations were based on an asymptomatic DVT, is reasonable. An opinion being inconsistent with a provider's treatment notes is a specific and legitimate reason to reject the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the limitation to sedentary work is not supported by consistently normal examinations of the lower extremities. As such, this reason is sufficient to support the ALJ's rejection of the opinion.

The ALJ's third reason for rejecting the opinion, that it was based on Plaintiff' old right ankle injury, is specific and legitimate. The ALJ found that "Dr. Lu based [his] opinion on the claimant's old right ankle fracture, which occurred in the early 1990s. However, as noted above, the claimant was subsequently able to work in various light or medium jobs that required him to stand/walk for up [to] 8 hours in an 8-hour workday." Tr. 26.

The old ankle injury was the major impairment that resulted in limitations according to Dr. Lu's opinion. Tr. 494-96. When asked what limitations cause pain, Dr. Lu stated that the ankle injury caused pain. Tr. 494. It was this pain that affected Plaintiff's ability to work on a regular and continuous basis. Tr. 495. Plaintiff asserts that the ALJ overlooked the ankle being reinjured in 2009. ECF No. 15 at 9-10. However, the ALJ specifically addressed the record post 2009, stating that "a review of the medical records from 2009 through 2015 reveals appointments to address leg issue involving cellulitis and deep vein thrombosis, but essentially no complaints, treatment, or workup for the right ankle." Tr. 24.

The ALJ is accurate that there is a lack of complaints regarding ankle pain in the record. Tr. 406 ("He denies any increased pain with movement of his ankle."). The only time Plaintiff reports ankle pain is to the consultative examiner, Tr. 442-44, and at the hearing, Tr. 721. The record supports the ALJ's conclusion that Dr. Lu's opinion was based on the right ankle injury, which appears asymptomatic in the record and does not support the limitation to sedentary work. Therefore, this reason meets the specific and legitimate standard.

The ALJ's fourth reason for rejecting Dr. Lu's opinion, that it was inconsistent with his treatment notes, is specific and legitimate. An opinion being inconsistent with a provider's treatment notes is a specific and legitimate reason to reject the opinion. *Bayliss*, 427 F.3d at 1216. As discussed above, Dr. Lu's notes show substantially normal physical observations regarding Plaintiff's lower extremities. This is inconsistent with the opinion that Plaintiff's functional limitations stemming from his DVT and his old right ankle injury limit him to sedentary work. Therefore, this is sufficient to support the rejection of the opinion.

The ALJ's fifth reason for rejecting Dr. Lu's opinion, that it was inconsistent with Plaintiff's own reports, is not specific and legitimate. The ALJ stated that Plaintiff reported "that he can lift up to 20 pounds and walk for up to 1 hour or up to 2 miles before his symptoms flare up." Tr. 27. On July 25, 2013, Plaintiff reported that he can walk for about an hour. Tr. 437. On July 27, 2013, Plaintiff reported that he can walk approximately two miles or stand for 20 minutes before he has right ankle pain. Tr. 443. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). However, the ALJ failed to state how the ability to stand and walk for limited periods of time is inconsistent with Dr. Lu's opinion. Therefore, this reason fails to meet the specific and legitimate standard.

///

Plaintiff also alleges that the ALJ erred by failing to consider the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). ECF No. 15 at 7-8. The ALJ is to consider all medical opinions that are a part of the record, and unless the ALJ gives a treating source's opinion controlling weight, he is to consider the following factors when assigning weight to an opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Plaintiff asserts that the ALJ's failure to consider and apply these factors constitutes reversible error. ECF No. 15 at 8 (*citing Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)). However, the ALJ's reasons for rejecting the opinion speak to these factors and demonstrate that the ALJ's consideration of the opinion was in line with the regulations. The ALJ repeatedly addressed the supportability of Dr. Lu's opinion. He found that the opined impairments and their resulting severity of symptoms and limitations were not supported. Tr. 26. The ALJ discussed how the opinion was inconsistent with Dr. Lu's treatment notes and the medical evidence in the record. Tr. 26-27. Therefore, the ALJ considered the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c).

In conclusion, the ALJ provided legally sufficient reasons for rejecting Dr. Lu's opinion. While the first and last reasons he provided were not supported by substantial evidence, any resulting error would be considered harmless as the remaining reasons were specific and legitimate. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

**2.    Obesity**

Plaintiff argues that the ALJ erred by failing to consider his obesity. ECF No. 15 at 12-13.

Plaintiff has a BMI both below and above 30 throughout the record: Tr. 398 (March 22, 2010, BMI of 30,); Tr. 474 (May 1, 2014, BMI of 30); Tr. 479 (May

29, 2014, BMI 29.2); Tr. 511 (June 30, 2014, BMI 29.6); Tr. 501 (August 1, 2014, BMI 29.6); Tr. 552 (September 9, 2014, BMI 29.5); Tr. 530 (November 14, 2014, BMI 29.6); Tr. 629 (December 29, 2014, BMI 31); Tr. 620 (February 5, 2015, BMI 30.4); Tr. 614 (February 25, 2015, BMI 30.4); Tr. 639 (July 10, 2015, BMI 30.4). The ALJ did not address obesity in his decision. Tr. 16-29.

The Ninth Circuit has held that, under certain circumstances, an ALJ is required to include a claimant's obesity in the analysis of his functional capacity, regardless of whether he raises obesity as a disabling factor. *See Celaya v. Halter*, 332 F.3d 1177, 1181-83 (9th Cir. 2003); *see also* S.S.R. 96-8p ("In assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). On the other hand, the mere presence of a mention in the record that the claimant was obese is insufficient to require the ALJ to explicitly consider the issue in his written opinion. *See Burch v. Barnhart*, 400 F.3d 676, 681-84 (9th Cir. 2005).

In *Celaya*, the Ninth Circuit looked to three factors in holding that the ALJ had a duty to consider the impact of obesity on the claimant's other impairments: (1) obesity was raised implicitly in the claimant's reported symptoms; (2) the claimant's obesity was close to the listing level and was a condition that could exacerbate her reported illnesses; and (3) the claimant was illiterate and unrepresented. *Id*. at 1182.

In *Burch*, the Ninth Circuit carefully distinguished and limited its earlier holding. 400 F.3d at 681-84. The *Burch* court found that that the record before it "[did] not indicate that [the claimant's] obesity exacerbated her other impairments." *Id*. "[M]ore significantly," the court noted, the claimant was represented by counsel before the ALJ. *Id*. at 682. The court also noted that the ALJ had at least acknowledged the evidence regarding the claimant's obesity. *Id*. at 684. The court therefore rejected the claimant's argument that the ALJ had

failed to properly consider the impact of her obesity on her other impairments. *Id*.

In this case, the ALJ's failure to address Plaintiff's obesity was not reversible error. First, Plaintiff was represented by counsel before the ALJ and did not raise obesity at the hearing or in his disability application. Tr. 287, 672, 702-75. Second, although Plaintiff had a BMI exceeding 30 in the record, he failed to address any evidence showing that his obesity exacerbated his other symptoms. Third, even before this Court, Plaintiff "has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." *Burch*, 400 F.3d at 683. Therefore, this Court finds that the ALJ did not err by omitting obesity from the decision.

**3.    Residual Function Capacity and Grids**

Plaintiff argues that even if the above two issues were resolved in the Defendant's favor, the ALJ still erred by improperly classifying his residual functional capacity as light work and applying grid rules consistent with a light work limitation. ECF No. 15 at 13-15.

As noted above, if a claimant is found to be incapable of returning to his past relevant work at step four, the ALJ must show there are a significant number of jobs in the national economy that the claimant can perform at step five. *See Tackett*, 180 F.3d at 1098-99. The ALJ may do this through the testimony of a vocational expert or by reference to the Grids. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett,* 180 F.3d at 1100-01. The Grids reflect the claimant's maximum sustained exertional work capacity. *See* S.S.R. 83-10 ("exertional capabilities" are used "to identify maximum sustained work capability"). In cases, where there is a need to alternate between sitting and standing, a vocational expert "should be consulted to clarify the implications for the occupational base." S.S.R. 83-12.

Plaintiff asserts that because Plaintiff's residual functional capacity determination fell between sedentary and light work, the ALJ was required to

apply the grid rules associated with sedentary work, which would result in a finding of "disabled" on Plaintiff's fiftieth birthday. ECF No. 15 at 14-15. In doing so, he relies on a case from the Western District of Washington, *Merritt v. Colvin*. *Id. citing* 2015 WL 4039355 (W.D. Wash. July 2, 2015). However, in *Merritt*, the Plaintiff was found capable of light work with the additional limitation of being precluded from standing at least six hours in an eight hour work day. *Id*. Here, Plaintiff is not precluded from standing the full number of hours associated with light work, instead he is required to alternate between sitting and standing. Tr. 22. Therefore, under S.S.R. 83-12, a vocational expert was required. The ALJ called a vocational expert and that expert provided interrogatories regarding jobs that were available in the national economy consistent with the ALJ's residual functional capacity determination. Tr. 326-32. Therefore, the ALJ did not err at step five by relying on evidence from a vocational expert when the occupational base was eroded due to Plaintiff's need to alternate between sitting and standing.

**4.     Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that his symptom statements were not entirely credible. ECF No. 15 at 16-21.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's symptom statements to be less than fully credible concerning the intensity, persistence, and limiting effects of these symptoms. Tr. 23. The ALJ reasoned that Plaintiff's symptom statements were less than fully

credible because (1) his alleged severity of symptoms is inconsistent with the medical evidence, (2) there is evidence of symptom magnification, (3) his alleged severity of symptoms is inconsistent with the lack of treatment, and (4) he made inconsistent statements regarding his limitations.

The ALJ's first reason for finding Plaintiff's symptom statements less than fully reliable, that the severity of his reported symptoms is not supported by medical evidence, is specific, clear and convincing. Although it cannot serve as the sole reason for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ made several specific findings demonstrating that Plaintiff's symptom statements were not supported by the medical evidence: "contrary to his allegations of frequent right ankle swelling, physical examinations frequently show no edema in his extremities" with multiple citations to the record showing normal examinations; "the claimant testified that he has to lie down and elevate his legs frequently throughout the week, no provider has ever prescribed that long-term" followed by a summary of the short term periods in which he was instructed to elevate his legs; and "He alleged that he has essentially no function in the right arm or shoulder. The claimant's testimony, however, is in stark contrast to the benign radiographic findings," followed by a summary of the normal imaging of the right upper extremity. Tr. 24. Plaintiff argues that the evidence the ALJ cites to support his conclusions are a misrepresentation of the record and that the ALJ is cherry-picking evidence to discredit him. ECF No. 15 at 17-18.

While it is error for an ALJ to cherry-pick evidence to support his findings, *Garrison v. Colvin*, a review of the record as a whole demonstrates that the ALJ's conclusions are supported by substantial evidence. 759 F.3d 759, 1017 (9th Cir. 2014). As discussed at length above, Plaintiff repeatedly had normal examination results of the lower extremities. *See supra*. There is no provider who stated

Plaintiff would need to elevate his legs beyond episodes of cellulitis and these outbreaks occur infrequently. The first documented outbreak was in October of 2009. Tr. 365. During an outbreak of cellulitis in April of 2012, Plaintiff was told to elevate his legs and avoid prolonged standing. Tr. 425. Despite treatment, the cellulitis was still present in May of 2012. Tr. 419. In July of 2014, Plaintiff had another cellulitis outbreak that lasted a week despite antibiotics. Tr. 483. He was again diagnosed with an outbreak in December of 2014. Tr. 411. During a period of active DVT in March 2010, Plaintiff admitted he was only elevating his feet at night. Tr. 398. Additionally, the imaging of Plaintiff's right upper extremity consistently showed normal or mild results. Tr. 415 (A November 24, 2012 x-ray of shoulder shows "No evidence of fracture, dislocation, or focal bony defect."); Tr. 445 (A July 27, 2013 x-ray of shoulder is unremarkable.); Tr. 475 (A May 1, 2014 x-ray showed "evidence of osteoarticular abnormality. Degenerative [osteaoarticular] changes with reduced glenohumeral joint space of [right] shoulder."); Tr. 604, 632-33 (An MRI of the right shoulder in March of 2015 shows "mild marrow edema versus artifact in the region of the glenoid neck and base of the caracoid process of the indeterminate significance."); Tr. 593 (A May of 2015 x-ray showed "mild degenerative change of the AC joint. There is AC degenerative joint space loss."). As such, the ALJ's reason is supported by substantial evidence and is sufficient, with the other reasons provided, to support the ultimate determination that Plaintiff's symptom statements are unreliable.

Plaintiff challenges the ALJ's statement that "the overall evidence indicates that he retains the ability to perform light exertional work," by asserting that this is putting the preverbal cart before the horse. ECF No. 15 at 16-17. Essentially, Plaintiff argues that the ALJ supports his credibly determination with the residual functional capacity determination. *Id*. A claimant's statements regarding symptoms and limitations are considered when making a residual functional capacity determination. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Therefore,

Plaintiff's logic is accurate, that a credibility determination cannot be justified by the resulting residual functional capacity determination. However, the ALJ's statement is not that the credibility determination is supported by the residual functional capacity determination, but that the evidence as a whole supports a light exertional level residual functional capacity. Tr. 24. Therefore, Plaintiff's statements otherwise are not consistent with the evidence. The ALJ's focus is the evidence and what the evidence supports. Tr. 24. Therefore, Plaintiff's argument is without merit.

Plaintiff also breaks down the ALJ's comparison of Plaintiff's statements to the medical evidence into additional categories, arguing that the ALJ rejected Plaintiff's statements because his testimony regarding his DVT, cellulitis, and need to elevate his legs were not supported by the medical evidence. ECF No. 15 at 17-18. This is all presumed to be resolved in the above determination that the ALJ cited specific reasons to demonstrate that the severity of symptoms Plaintiff alleged were not supported by the evidence in the record.

The ALJ's second reason for rejecting Plaintiff's symptom statements, evidence of symptom magnification, is specific, clear and convincing. An ALJ may consider a claimant's failure to give maximum or consistent effort during evaluations. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ cited to a July 2013 consultative examination in which Dr. Dreguis stated that Plaintiff demonstrated that "[t]here were inconsistencies during range of motion testing. The claimant demonstrated little range of motion in the right shoulder and right ankle, but during the interview and testing other systems, a larger range of motion was seen." Tr. 25 *citing* Tr. 443. This is a specific, clear and convincing reason to reject Plaintiff's statements.

The ALJ's third reason for rejecting his symptom statements, that the alleged severity is inconsistent with the lack of treatment, meets the specific, clear and convincing standard. Noncompliance with medical care or unexplained or

inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). Here, the ALJ noted twice that despite his testimony of pain in his right ankle, his treatment records showed that he failed to complain of such pain when seen by his providers. Tr. 24, 26. Plaintiff alleges that the ALJ ignored the times he did complain about his right ankle to his providers. ECF No. 15 at 19. Additionally, Plaintiff argues that he was uninsured and lacked the financial means to seek care during the period in question. *Id*.

Plaintiff asserts that the ALJ ignored his complaints of ankle pain and cites to an April 26, 2012 report from Dr. Southwell, Tr. 425, and a July 27, 2013 report from Dr. Drenguis, Tr. 443, 445. *See* ECF No. 15 at 19. In the report from Dr. Southwell Plaintiff complains about ankle pain stemming from cellulitis, not the prior ankle injury. Tr. 425. The July 27, 2013 report from Dr. Drenguis was a consultative examination for benefits, and does not qualify as complaints to a provider in the course of seeking treatment as Plaintiff asserts. Tr. 443, 445.

Plaintiff also claims lack of insurance and financial means kept him from seeking treatment. However, the record shows that while he may have gone for a period without health insurance, he was a recipient of Medicaid during the relevant time period. Tr. 408, 412, 417, 421, 453, 464, 467, 469, 473, 477, 481, 500, 509, 529, 539, 542, 551, 556, 561, 606, 609, 616-17, 629, 637, 719. During this time, he sought treatment for his other impairments. *Id*. Therefore, a failure to seek treatment for his ankle injury while he was insured supports the ALJ's rationale that his ankle impairment was not as severe as he alleged. Therefore, this reason meets the specific, clear and convincing standard.

The ALJ's fourth reason for rejecting his symptoms statements, that he made

inconsistent statements regarding his limitations, meets the specific, clear and convincing standard. The ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. Here, the ALJ found that in July of 2013, Plaintiff stated that he could lift up to 20 pounds and had no difficulty reaching objects on higher or lower shelves. Tr. 25 *citing* Tr. 443. Yet in the very next month, Plaintiff reported that he was seen in November of 2012 and was told his shoulder was separated and he was not to lift more than ten pounds. Tr. 25 *citing* Tr. 451. A review of the November 2012 treatment notes addressing Plaintiff's shoulder injury included an x-ray demonstrating no evidence of fracture, dislocation, or focal bony defect. Tr. 415. Plaintiff was diagnosed with a possible rotator cuff injury vs. tendonitis. Tr. 416. There was no lifting limitation assigned. Tr. 414-17. Plaintiff argues that he is not a medical provider and should not be put at a disadvantage for not using the correct medical term when describing his injury. ECF No. 15 at 20. However, the issue is not Plaintiff's misidentifying the medical term, the issue is that in two statements made a month apart, he provided two lifting limitations. This inconsistency is sufficient to support the ALJ's determination that his reported symptom severity may not be reliable.

In conclusion, the ALJ's determination that Plaintiff's symptom statements were less than fully credible is supported by substantial evidence and legally sufficient reasons. This Court will not disturb the ALJ's determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF Nos. 14, 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED July 9, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE